```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * *
UNITED STATES OF AMERICA     *
                             *
            vs.              *     CRIMINAL ACTION
                             *     No. 11-10212-JLT-1
JOHN WILLIS                  *
                             *
* * * * * * * * * * * * * *

          BEFORE THE HONORABLE JOSEPH L. TAURO
                UNITED STATES DISTRICT JUDGE
                      RULE 11 HEARING

A P P E A R A N C E S

          UNITED STATES ATTORNEY'S OFFICE
          1 Courthouse Way, Suite 9200
          Boston, Massachusetts 02210
          for the United States
          By:  Timothy Moran, AUSA
               Richard Hoffman, AUSA

          DENNER PELLEGRINO, LLP
          265 State Street
          Springfield, Massachusetts 01103
          for the defendant
          By:  Charles E. Dolan, Esq.



                                   Courtroom No. 22
                                   John J. Moakley Courthouse
                                   1 Courthouse Way
                                   Boston, Massachusetts 02210
                                   March 14, 2013
                                   2:20 p.m.



                   CAROL LYNN SCOTT, CSR, RMR
                      Official Court Reporter
                   One Courthouse Way, Suite 7204
                     Boston, Massachusetts 02210
                          (617) 330-1377
```

```
 1                      P R O C E E D I N G S
 2              THE CLERK:  All rise for the Honorable Court.
 3              THE COURT:  Good afternoon, everybody.
 4              VOICES:  Good afternoon, Judge.
 5              THE CLERK:  This is criminal matter
 6   No. 11-10213, United States of America versus John Willis.
 7          Counsel please identify themselves for the record.
 8              MR. DOLAN:  Good afternoon, Your Honor.
 9   Charles Dolan for the defendant Mr. John Willis.
10              MR. MORAN:  Good afternoon, Your Honor.
11   Timothy Moran and Richard Hoffman for the United States.
12              THE COURT:  Good afternoon.  Sit down
13   everybody, please.
14          We are here for a straight plea; is that it?
15              THE CLERK:  A straight plea, yes, Judge.
16              MR. MORAN:  That's correct, Your Honor.
17              THE COURT:  Okay.  Your client is prepared to
18   have me make inquiry of him; is he?
19              MR. DOLAN:  He is, Your Honor.
20              THE COURT:  All right.  Mr. Willis --
21              MR. DOLAN:  Do you want him to stand, Your
22   Honor?
23              THE COURT:  Yes, please.
24              THE DEFENDANT:  Yes, sir.
25              THE COURT:  I am going to go over a number of
```

1  matters with you.  If you don't understand anything I have
2  to say, please let me know and I will try to make myself
3  clearer.
4           Do you understand that?
5           **THE DEFENDANT:**  Yes, sir.
6           **THE COURT:**  If you want to stop at any time
7  and consult with your lawyer, let me know that and I will
8  certainly permit you to do so.
9           Do you understand?
10          **THE DEFENDANT:**  Yes.
11          **THE COURT:**  Now, the first thing I want to
12  make sure of is that you understand what you are being
13  charged with and what the penalties are that you face and I
14  am going to ask the U.S. Attorney to give us that
15  information now, please.
16          **THE DEFENDANT:**  Yes.
17          **MR. MORAN:**  Your Honor, Count 1 of the first
18  or the second superseding indictment charges conspiracy to
19  distribute and possess with intent to distribute Oxycodone
20  in violation of Title 21, United States Code, Section 846.
21  The maximum penalties facing this defendant for that charge,
22  the government filed an 851 notice of a prior drug
23  conviction, are a maximum term of 30 years imprisonment, a
24  maximum fine of two million dollars, a mandatory minimum
25  term of six years of supervised release up to life

1   supervised release and a mandatory $100 special assessment
2   and forfeiture to the extent charged in the second
3   superseding indictment.
4          Your Honor, Count 2 of the second superseding
5   indictment charges a money laundering conspiracy in
6   violation of Title 18, United States Code, Section 1956(h).
7   The maximum penalties for Count 2 are a maximum term of 20
8   years imprisonment, a maximum fine of $250,000 or twice the
9   value of the property laundered, a maximum term of three
10  years of supervised release, a mandatory $100 special
11  assessment and forfeiture to the extent charged in the
12  second superseding indictment.
13         **THE COURT:**  Okay.  Counsel, are you satisfied
14  with that recitation of the charges and the penalties?
15         **MR. DOLAN:**  Yes, Your Honor.
16         **THE COURT:**  Okay.
17         All right.  Now, Mr. Willis, I want you to
18  understand that you have a number of important rights under
19  our Constitution and one of those is particularly
20  significant for your purposes here at this moment.  And what
21  I am talking about is your Fifth Amendment right not to
22  incriminate yourself.  And what this means basically is that
23  no one can force you to speak and then use your words
24  against you in a way that might expose you to some
25  punishment, whether that be a jail term, a fine or even

1    probation.
2             You have a right to remain silent rather than to
3    speak and find that your words were used against you in some
4    fashion that caused you some punishment.
5             Do you understand that?
6                  **THE DEFENDANT:**  Yes, sir.
7                  **THE COURT:**  And I want you to appreciate that
8    if you plead guilty here you will as a practical matter be
9    waiving your Fifth Amendment protection and exposing
10   yourself to punishment.
11            Do you understand that?
12                 **THE DEFENDANT:**  Yes, sir.
13                 **THE COURT:**  I also want you to understand that
14   you are accused of having committed this criminal activity
15   but you are presumed to be innocent and what this means is
16   that you don't have to come to court prepared to convince
17   anybody that you were not involved in this criminal
18   enterprise.  To the contrary, the government has to come to
19   court with a sufficient amount of evidence that would
20   satisfy a jury of 12 people, all of whom were sworn to be
21   impartial, all of whom were selected at random.  The
22   government has to convince all 12 of those jurors of your
23   guilt beyond a reasonable doubt which means to a certainty.
24   Otherwise the presumption of innocence carries through.
25            Do you understand that?

1         **THE DEFENDANT:** Yes, sir.

2         **THE COURT:** Now, in order for the government
3    to meet that burden, there would have to be a trial here in
4    open court. You heard me talk about the fact that you don't
5    have to convince anybody of anything and that the government
6    has to come in with evidence that would satisfy a jury of
7    your guilt beyond a reasonable doubt.

8         Now, in order for the government to meet that
9    burden, there would, of course, have to be a trial here in
10   open court. You would be represented by counsel at that
11   trial. Your lawyer would have the opportunity to try to
12   tear down the government's case against you and could do so
13   in a variety of ways. Your lawyer could present evidence on
14   your behalf, could cross-examine government witnesses in an
15   effort to try to discredit them. You could take the witness
16   stand yourself and tell your own story if you wanted to do
17   that, although no one could force you to speak at all at the
18   trial.

19        But I want you to understand that these are among
20   the many opportunities that attach to a trial and that if
21   you plead guilty here today, that as a practical matter you
22   will be waiving these opportunities because when you say you
23   are guilty, there will be no trial and the only thing that
24   will remain in the case is for me to sentence you.

25        Do you understand that?

1           **THE DEFENDANT:**  Yes, sir.
2           **THE COURT:**  I also want you to understand that
3  if you plead guilty here today I may ask you some questions
4  about these offenses and if I do, your answers to me must be
5  truthful.  Otherwise you will be facing the possibility of
6  being charged with having committed perjury or having made a
7  false statement to the Court.
8       Do you understand that?
9           **THE DEFENDANT:**  Yes.
10          **THE COURT:**  Have you had anything to eat or
11 drink today that might in any way affect your ability to
12 think normally?
13          **THE DEFENDANT:**  No, sir.
14          **THE COURT:**  Any medication?
15          **THE DEFENDANT:**  No, sir.
16          **THE COURT:**  Any liquor or anything like that?
17          **THE DEFENDANT:**  No, sir.
18          **THE COURT:**  Do you feel as though you know
19 what you are doing here today?
20          **THE DEFENDANT:**  I do.
21          **THE COURT:**  Counsel, on the basis of your
22 pretrial preparation do you know any reason why your client
23 should not plead guilty?
24          **MR. DOLAN:**  No, I don't, Your Honor.
25          **THE COURT:**  Has there been a plea letter here

1   back and forth?
2              **MR. DOLAN:**  There has been extensive
3   negotiations.
4              **THE COURT:**  Any letter?
5              **MR. DOLAN:**  I'm sorry?
6              **MR. MORAN:**  There is no plea agreement, no.
7              **MR. DOLAN:**  There is no plea agreement.
8              **THE COURT:**  Okay.  Let's have a basis in fact,
9   please.
10             **MR. MORAN:**  Thank you, Your Honor.
11             **THE COURT:**  You may sit down.
12             **MR. MORAN:**  Your Honor, if this case had gone
13  to trial against the defendant, the government would have
14  offered the testimony of cooperating defendants corroborated
15  by information compiled through physical and pole camera
16  surveillance, lawful searches and seizures, including
17  seizures of drugs and money, payments of other witnesses and
18  evidence derived from court-authorized Title III
19  surveillance of several phones including phones used by the
20  defendant.
21         Your Honor, the defendant led a drug trafficking
22  conspiracy that ran from at least 2010 through May 2011.
23  The conspiracy under the defendant's leadership acquired
24  large quantities of Oxycodone in Florida and transported
25  that Oxycodone first by plane and later by car to the Boston

```
 1      area where the drugs were sold in wholesale quantities.  In
 2      addition the defendant led a money-laundering conspiracy
 3      which took the proceeds of that drug activity and spent it
 4      on large and expensive items, both in the Boston area and
 5      also transported them, the proceeds, back to Florida to fund
 6      the purchase of additional drugs to pay for expensive homes
 7      where the drug dealers met and assembled shipments and also
 8      paid for expensive items in Florida and the money was also
 9      used to invest in an otherwise legitimate business such as a
10      liquor store in the South End of Boston and the attempted
11      purchase of a nightclub in Florida.
12              Your Honor, the defendant was at the center of a
13      very large investigation so there is actually very, a lot of
14      evidence against the defendant.  I will attempt to sketch
15      out a few of the high points for Your Honor's benefit for
16      the change of plea hearing.
17              The conspiracy started sometime in 2010.  At the
18      beginning the conspirators met at the apartments of Brian
19      Bowes and Peter Melendez and then later met at two homes,
20      the first in Wilton Manors, the second in Pompano Beach,
21      Florida that the defendant rented in other people's names to
22      conduct the affairs of the conspiracy.
23              They would assemble multi-thousand pill quantities
24      of Oxycodone.  The pills were placed in large multivitamin
25      bottles that they bought at Walgreens or similar locations.
```

```
 1    The conspirators would cut off the silver tab at the top of
 2    the bottle, remove the cotton, dump out the vitamins, put in
 3    the Oxycodone and then would put the cotton back in and then
 4    with Crazy Glue they would reattach the silver tab and then
 5    put the cap back on so that it would appear that the bottles
 6    had never been opened.  They used that method primarily to
 7    transport the pills from Florida to Boston.
 8              In total the conspiracy made many dozens of trips.
 9    Each co-conspirator made as many as 25 trips and the
10    shipments ranged from 1,000 pills at the low end averaging
11    about 4,000 or 5,000 pills up to 8,000 pills or more at the
12    high end.
13              Your Honor, this defendant himself was stopped on
14    October 20, 2010 at Logan Airport attempting to board a
15    plane to Florida.  At that time the trooper seized
16    approximately $13,000 in cash from the defendant which he
17    was not able to explain.
18              On December 1st, 2010 another co-conspirator, Brian
19    Bowes, was stopped attempting to transport approximately
20    $37,000 in cash from Boston to Florida.  That was both drug
21    money.
22              Similarly on January 18, 2011 co-conspirator Steven
23    Davis -- Steven Le, excuse me, Your Honor, Steven Le was
24    attempting to bring approximately 8,000 pills of Oxycodone
25    from Florida to Boston, was stopped at the Fort Lauderdale
```

1   airport and the pills were seized from him.  He had been
2   sent by the defendant John Willis, was attempting to meet up
3   with a co-conspirator in Boston.
4          There were other shipments delivered in addition by
5   Anevay Duffy, by Michael Shaw, by Mark Thompson, by Brian
6   Bowes, Kevin Baranowski and Pete Melendez, among others.
7          After the seizure from Steven Le on January 18,
8   2011 at the defendant's direction the conspiracy shifted its
9   methods and attempted to refrain from using airlines.  They
10  then would drive the shipments up using rental cars.  They
11  were, the pills were brought to the Boston area where they
12  were resold to customers on Cape Cod and Rhode Island, the
13  Boston area and in Vermont.
14         On February 10 the defendant and co-defendant
15  Michael Shaw were traveling from Boston to Florida.  Prior
16  to that in January 2011 the defendant decided to purchase a
17  nightclub and formed a corporation called the 954 Nightclub
18  Group, Inc. incorporated in Fort Lauderdale, Florida.  That
19  was a shell corporation which was going to buy a nightclub
20  using drug money.  The corporation was going be under the
21  name of co-defendant Brant Welty but the actual owner would
22  have been John Willis.
23         On February 10th they were, Willis and Shaw were
24  attempting to bring $98,000 in cash from Boston to Florida.
25  They were stopped in Ridgeland, South Carolina and the money

1    was seized from them there.  It was drug proceeds.
2            Later at the defendant's request co-defendant Shaw
3    submitted a false affidavit to the DEA in an attempt to
4    reclaim the drug proceeds.
5            On March 22nd there was another large seizure of
6    Oxycodone from a co-defendant named Vincent Alberico.  What
7    happened is that on the morning of the 22nd the defendant
8    John Willis met with Vincent Alberico who was a drug courier
9    for one of his large customers.  Alberico gave Willis about
10   $30,000 which was half payment for the shipment of drugs.
11   Willis then instructed Alberico to meet a courier at the
12   South Shore Plaza in Braintree.  The courier -- Alberico
13   then went to the South Shore Plaza and picked up about 4,000
14   pills of Oxycodone from Anevay Duffy.
15           The police then followed Alberico, stopped him
16   around Duxbury, Massachusetts on Route 3 and seized about
17   4,000 pills of Oxycodone from him.
18           Two days later John Willis and Brant Welty were
19   attempting to travel from Boston to Florida with
20   approximately $42,000.  They were stopped in Dillon, South
21   Carolina and police there seized the $42,000 from Willis and
22   Welty.
23           Willis incidentally attempted to identify himself
24   as Brant Welty despite the fact that Brant Welty was also in
25   the car.

```
 1            And Brant Welty I should point out functioned as
 2   the right-hand man or Boston head of the operation when John
 3   Willis was not present.  Pete Melendez led the organization
 4   in Florida.
 5            Altogether the conspiracy purchased several
 6   expensive cars, boats, motorcycles and jet skis.  Willis
 7   also made an investment in a Boston liquor store in the
 8   South End, Cru, C-R-U, which was ostensibly owned by Brant
 9   and Bridget Welty and that was drug money.
10            They also used drug money to post bail for Steven
11   Le and an attempt to purchase a nightclub in Florida.
12            Altogether the investments included the investment
13   of Cru, a 2005 Hummer H2, a 2008 Mercedes E350, a 2005
14   American IronHorse motorcycle, a 1998 Sea Ray boat named the
15   DOUBLE DOWN, a 2005 Bentley Continental, the rental of a
16   home at 2109 Northeast 18th Avenue, Wilton Manors, Florida,
17   a Baja 38 Special boat purchased on January 7th or 8th in
18   Fort Lauderdale, Florida, a Mercedes-Benz SL550 purchased on
19   or about January 18, 2011 in Florida, the attempted purchase
20   of a Sky Club out of 954 Nightclub Group, a 2006 Porsche
21   Cayenne and the rental of a home at 2490 Northeast 23rd
22   Court, Pompano Beach, Florida.  And the government would
23   have showed through the financial records and otherwise all
24   of those assets were purchased using drug money.
25            (Whereupon, government counsel conferred.)
```

1           **MR. MORAN:**  In sum, Your Honor, the drug --
2  the money laundering conspiracy involved violations of money
3  laundering both by promotion, concealments and illegal
4  financial transactions and evading reporting requirements.
5           **THE COURT:**  And the what?
6           **MR. MORAN:**  And evading reporting
7  requirements.
8           **THE COURT:**  Okay.  Anything else?
9           **MR. MORAN:**  That's it, Your Honor.
10          **THE COURT:**  Counsel, do you agree with the
11  statement of fact that has been offered by the government?
12          **MR. DOLAN:**  In substance, yes, Your Honor.
13          **THE COURT:**  Okay.
14      All right.  Go ahead, take the plea.
15          **THE CLERK:**  Mr. Willis, as to Count 1 of the
16  second superseding indictment charging you with conspiracy
17  to distribute and possess with intent to distribute
18  Oxycodone, in violation of 21 United States Code,
19  Section 846, how do you plead to Count 1?
20          **THE DEFENDANT:**  Guilty.
21          **THE CLERK:**  As to Count 2 of the second
22  superseding indictment charging you with money laundering
23  conspiracy, in violation of 18 United States Code,
24  Section 1956(h), how do you plead to Count 2?
25          **THE DEFENDANT:**  Guilty.

```
 1                    THE CLERK:  Thank you.
 2                    THE COURT:  Any threats or promises made to
 3      you to get you to plead guilty here?
 4                    THE DEFENDANT:  No, sir.
 5                    THE COURT:  All right.  I am satisfied the
 6      defendant understands the nature of the accusations against
 7      him, that he understands the maximum consequences of his
 8      guilty plea in terms of what punishment could be imposed,
 9      that he has pleaded guilty voluntarily and that there is a
10      basis in fact for his having done so.
11              We will have sentencing when?
12                    THE CLERK:  Sentencing, June 6 at 2:15.
13                    THE COURT:  Is that convenient for everybody?
14                    MR. DOLAN:  Yes, Your Honor.
15                    MR. MORAN:  Yes, Your Honor.
16                    THE COURT:  Anything else that should come
17      before the Court?
18                    MR. MORAN:  No, Your Honor, nothing from the
19      government.
20                    MR. DOLAN:  Nothing from the defense, Your
21      Honor.
22                    THE COURT:  Okay.  Thank you.
23                    THE CLERK:  Court is in recess.
24
25              (WHEREUPON, the proceedings were recessed at 2:45
```

1            p.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

      I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/S/CAROL LYNN SCOTT

_____

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377

**DATE: June 4, 2013**